UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BARBARA GREEN,

           Plaintiff,

     v.                                  20-CV-1797-LJV-HKS
                                            DECISION & ORDER

GENERAL MOTORS,

           Defendant.
_____

On December 7, 2020, the plaintiff, Barbara Green, commenced this action against General Motors. Docket Item 1. Green is employed at the General Motors facility in Tonawanda, New York, and she alleges that General Motors unlawfully retaliated against her for filing a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). *Id.* She brings retaliation claims under both Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law ("NYSHRL"). *Id.* at ¶¶ 34-48.

On April 18, 2022, General Motors moved for summary judgment. Docket Item 20. Green responded to that motion about three months later, Docket Item 25, and on July 29, 2022, General Motors replied, Docket Item 26.

For the reasons that follow, General Motors' motion for summary judgment is granted on Green's Title VII retaliation claim. But this Court declines to exercise supplemental jurisdiction over her NYSHRL retaliation claim and instead dismisses that claim without prejudice.

## **FACTUAL BACKGROUND**[1]

Green has worked at General Motors since 1978.  Docket Item 20-2 at ¶ 1; Docket Item 25-9 at ¶ 1.  She originally worked at a General Motors facility in Michigan before transferring to its Tonawanda facility in 2018.  Docket Item 20-2 at ¶¶ 2-3; Docket Item 25-9 at ¶¶ 2-3.  Green currently is employed as a Machine Repair Journeywoman at the Tonawanda facility.  Docket Item 20-2 at ¶ 4; Docket Item 25-9 at ¶ 4.

In September 2019, Green was disciplined for using profanity in an exchange with a coworker.  Docket Item 20-2 at ¶¶ 16-20; Docket Item 25-9 at ¶¶ 16-20.  She was asked to leave the facility and ultimately was suspended for a little more than a week.  Docket Item 20-2 at ¶¶ 19-20; Docket Item 25-9 at ¶¶ 19-20.  Green then filed a grievance with her union alleging that she had not been adequately warned about the prohibition on workplace profanity.  Docket Item 20-2 at ¶ 20; Docket Item 25-9 at ¶ 20; Docket Item 20-3 at 303 (grievance charging that "[a]busive language was not specifically identified in the harassment policy").  At her deposition, Green did not recall the outcome of that grievance.  Docket Item 20-3 at 27.

---

[1] Much of Green's response to General Motors' statement of material facts consists of factual assertions that are not supported by citations to the record.  *See, e.g.*, Docket Item 25-9 at 6-10.  Federal Rule of Civil Procedure 56(c)(1) requires that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  This Court cites the parties' statements of material fact, Docket Items 20-2 and 25-9, when those facts are supported by the record.  Because on a motion for summary judgment, a court "construe[s] the evidence in the light most favorable to the non-moving party and draw[s] all reasonable inferences in [her] favor," *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018), this Court views the evidence in the light most favorable to Green.

In March 2020, Green filed a charge of discrimination with the EEOC, claiming that General Motors did not provide her with necessary training opportunities. Docket Item 20-2 at ¶ 23; Docket Item 25-9 at ¶ 23; Docket Item 25-5. More specifically, Green, who is Black, alleged that General Motors failed to adequately train her when she started at the Tonawanda facility but gave white employees adequate training when they began working there. *See* Docket Item 25-5 at 4 (EEOC inquiry). When Green filed this case, that EEOC charge still was pending. *See* Docket Item 1 at ¶ 7. At her deposition in this case, Green testified that she continued to be assigned jobs "for which she had no training," including two tasks in October 2020—that is, after she filed the March 2020 EEOC charge of discrimination. Docket Item 20-3 at 52.

In August 2020, Green received a second disciplinary suspension. Docket Item 20-2 at ¶ 27; Docket Item 25-9 at ¶ 27. This time, Green was suspended for allegedly violating facility safety rules and directing profanity at a coworker. *See* Docket Item 20-2 at ¶ 27; Docket Item 25-9 at ¶ 27.

Green's second suspension resulted from an incident on August 26, 2020, when she was sitting on a "yellow guard rail" before a safety meeting. Docket Item 20-2 at ¶ 24; Docket Item 25-9 at ¶ 24; Docket Item 20-3 at 26. Green says that she had sat on that rail before; in fact, she says that she sat there without incident on the two days before that meeting. Docket Item 20-3 at 26. But that day, the Tonawanda facility manager approached her and asked her to "get down off the rail" because he did not "want to see [her] fall." Docket Item 20-2 at ¶¶ 24-25; Docket Item 25-9 at ¶¶ 24-25; Docket Item 20-3 at 26. Green responded that she was "not going to fall," and the two then argued about whether Green needed to get off the rail. Docket Item 20-2 at ¶ 25;

3

Docket Item 25-9 at ¶ 25; Docket Item 20-3 at 26.  Green became "very agitated" and "upset" over the interaction.  Docket Item 20-2 at ¶ 25; Docket Item 25-9 at ¶ 25; Docket Item 20-3 at 26.  She eventually got down from the rail and told the facility manager that he did not "have to worry about [Green] coming to these meetings anymore ever."  Docket Item 20-2 at ¶ 25; Docket Item 25-9 at ¶ 25; Docket Item 20-3 at 26.

The parties dispute whether this was all Green said to the facility manager.  According to the defendants, Green also said "fuck you," Docket Item 20-2 at ¶ 26; Green, on the other hand, testified at her deposition that this "was a lie," and that she has "never in [her] life said that."[2]  Docket Item 20-3 at 25-26; Docket Item 25-9 at ¶ 26.

Green was suspended for a little more than two weeks for sitting on the rail and purportedly swearing at the facility manager.  Docket Item 20-2 at ¶ 27; Docket Item 25-9 at ¶ 27.  The "notice of disciplinary action" outlining the suspension cited Green with violating two "shop rules": "abusive language to any employee" and "disregard of safety rules."  Docket Item 20-3 at 325.  On September 20, 2020, Green filed a second charge of discrimination with the EEOC, this time alleging that her suspension was unlawful retaliation for filing the March 2020 charge of discrimination.  Docket Item 20-2 at ¶ 30; Docket Item 25-9 at ¶ 30.

Green also says that she has experienced a number of other workplace issues at the Tonawanda facility.  For example, she testified at her deposition that someone once took her "Essential Water" from a workplace refrigerator.  See Docket Item 20-3 at 48.  Green also testified that she was "missing tools" from her workspace "ever since [she]

---

[2] At her deposition, Green recalled that she was accused of telling the facility manager to "fuck off."  Docket Item 20-3 at 25.

4

got" to the Tonawanda facility, *id.* at 30, and that other items, including bottles of lotion, fans, and an empty Best Buy box, were taken from her work area, *id.* at 41, 48-49. Finally, Green says that she was removed from an internal General Motors "job sign-up board," which meant that she received less-favorable work assignments. Docket Item 20-2 at ¶¶ 14, 32; Docket Item 25-9 at ¶¶ 14, 32.

## **LEGAL PRINCIPLES**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant—that is, the party seeking summary judgment—has the burden of demonstrating that there is no disputed material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant may satisfy this burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *see* Fed. R. Civ. P. 56(c)(1)(B). Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted). If the nonmovant fails to do so, the court may grant summary judgment. *See Celotex*, 477 U.S. at 322-23.

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a

genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

## DISCUSSION

### I. TITLE VII CLAIM

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by" Title VII or "because [she] has made a charge, testified, assisted, or participated in any manner in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). "Retaliation claims under Title VII are evaluated under [the] three-step burden shifting analysis" of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

At the first step, "the plaintiff must establish a *prima facie* case of retaliation by showing (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citations and internal quotation marks omitted). "The plaintiff's burden in this regard is '*de minimis*,' and 'the court's role in evaluating a

6

summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.'" *Id.* (quoting *Jute*, 420 F.3d at 173).

"Once the plaintiff has established a *prima facie* showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (italicization added). If the employer "articulate[s] a non-retaliatory reason for the employment action, the presumption of retaliation arising from the [plaintiff's] establishment of the *prima facie* case drops from the picture," and the plaintiff then must establish that the "non-retaliatory reason is a mere pretext for retaliation." *Id.* (italicization added). "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non[-]retaliatory reasons for its action." *Id.* at 846.

General Motors does not dispute that Green has satisfied the first two elements of a *prima facie* retaliation case: she engaged in protected activity by filing the March 2020 charge of discrimination with the EEOC, and General Motors knew about that activity.[3] *See* Docket Item 20-1 at 10. But General Motors says that Green's claim fails

---

[3] Green also suggests that her union grievance challenging her September 2019 disciplinary suspension is protected activity under Title VII. *See* Docket Item 25 at 13 (generally alluding to "many complaints and . . . union grievances" before identifying "one grievance in 2019 regarding the allegation of [Green] using abusive language"). "Filing a union grievance regarding discriminatory treatment is a protected activity," but "union grievances that do not complain of discrimination do not constitute a protected activity." *Small v. N.Y.C. Dep't of Educ.*, 2023 WL 112546, at *11 (S.D.N.Y. Jan. 5, 2023). Green does not say that her 2019 grievance challenged discriminatory treatment, *see* Docket Item 25 at 13; in fact, the grievance, which Green attached to her

because she cannot establish a causal connection between her March 2020 EEOC charge and her September 2019 and August 2020 disciplinary suspensions—that is, the only adverse employment actions that General Motors says might give rise to a retaliation claim under Title VII. *See id.* at 13-15.

For the reasons that follow, this Court assumes that Green's disciplinary suspensions and her inadequate training are adverse employment actions. But only her August 2020 disciplinary suspension can possibly be linked to any protected activity, and that link is tenuous at best. And regardless, because Green has failed to show that her suspension was pretext for retaliation, General Motors is entitled to summary judgment on Green's Title VII retaliation claim.

### A.     Adverse Employment Action

For an adverse employment action to rise to the level of actionable retaliation, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). Title VII therefore does not reach all "petty slights or minor annoyances that often take place at work." *Id.* Instead, Title VII "prohibit[s] employer actions that

---

opposition papers, challenged her "excessive and unjust" discipline on the grounds that "[a]busive language was not specifically identified in the harassment policy." Docket Item 25-3 at 2. So Green's union grievance challenging her September 2019 disciplinary suspension is not protected activity for purposes of her Title VII retaliation claim.

are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id.* (citation and internal quotation marks omitted).

Although Green's Title VII retaliation claim explicitly challenges only her August 2020 disciplinary suspension, *see* Docket Item 1 at ¶¶ 34-41, her complaint and opposition papers detail several other workplace issues at General Motors' Tonawanda facility.  For example, she alleges that "[s]omeone stole [her] Essential [W]ater out of the skilled trades refrigerator," that "GM management would throw her personal boxes away," and that she "often found tools missing and . . . fans missing" from her work area.  *See id.* at ¶¶ 14-18; *see also* Docket Item 25 at 13.  It is not entirely clear whether Green now seeks to pursue a retaliation claim beyond the scope of what she alleged in her complaint or whether she alludes to those incidents as general illustrations of her problems at the Tonawanda facility.  Regardless, the sort of sporadic, everyday workplace activity that Green details—including the disappearance of her water and other items from her workplace area, *see* Docket Item 25 at 4-5—are the sort of "minor annoyances that often take place at work" and cannot support a retaliation claim.[4]  *See*

---

[4] Green also cannot causally link any of those allegations to protected activity. For example, because Green has not said when her Essential Water was taken from the refrigerator or when her troubleshooting light or her paper towels "came up missing," *see* Docket Item 1 at ¶¶ 15-18; Docket Item 25-9 at ¶¶ 12, 13, she has not connected those events to any protected activity.  Likewise, Green filed an internal complaint in February 2021 claiming that she was removed from General Motors' internal work assignment system, but it is not clear when that removal occurred.  Docket Item 20-5 at ¶ 3; Docket Item 25-9 at ¶ 32.  If that removal occurred around February 2021, it is too distant from any protected activity to support an inference of causation.  *See, e.g.*, *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 687 (S.D.N.Y. 2012) (finding Title VII retaliation claim insufficient because an "11 month gap is too long to allow for an inference of causation without any other evidence").  Similarly, Green's allegations about fans removed from her workplace cannot be causally linked to any protected activity because those incidents occurred more than a year after Green's March 2020 EEOC charge of discrimination.  *See* Docket Item 20-3 at 41 (Green's testifying that her

9

*Burlington N.*, 548 U.S. at 68; *see also Avillan v. Donahoe*, 483 F. App'x 637, 638 (2d Cir. 2012) (summary order) ("Appellant complains only of minor workplace inconveniences, such as being replaced as acting group leader, having his custodial route reassigned and having personal items removed from a locker.  These actions are not 'materially adverse.'").

By contrast, as General Motors concedes, Green's two disciplinary suspensions are the sort of materially adverse employment action that could provide the basis for an actionable Title VII claim.  *See* Docket Item 20-1 at 13.  This Court assumes that Green's allegedly inadequate training, which she says "placed her in working conditions that were unsafe," Docket Item 25 at 15, also could be an adverse employment action.  But for the reasons that follow, only the August 2020 suspension might possibly be causally connected to protected activity.

### B.     Causation

For a Title VII retaliation claim, the plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  "[B]ut-for causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Zann Kwan*, 737 F.3d at 846 (internal quotation marks omitted).  And "[a] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by

---

fans were moved after she returned from leave in July 2021); *see also Davis-Bell*, 851 F. Supp. 2d at 687.

the adverse employment action."[5]  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

Green's September 2019 suspension and her allegedly inadequate training cannot be causally linked to her March 2020 EEOC charge of discrimination.  The September 2019 suspension occurred long before her March 2020 EEOC charge of discrimination, and "[i]t is axiomatic that no [causal] relationship can be found to exist where the alleged adverse employment action began and ended *prior* to the commencement of any protected activity."  *Dansler-Hill v. Rochester Institute of Tech.*, 764 F. Supp. 2d 577, 582 (W.D.N.Y. 2011) (emphasis in original).  And the same is true about her claim of inadequate training:  Green says that she *never* was given adequate training at the Tonawanda facility—in other words, she claims that her training was deficient from the start.[6]  *See* Docket Item 1 at ¶ 14 ("Green had issues with her

---

[5] Green relies primarily on the temporal proximity between her March 2020 EEOC discrimination charge and her August 2020 disciplinary suspension to support her *prima facie* case of retaliation.  *See, e.g.*, Docket Item 25 at 12-13 (noting that "the period at issue" between the protected activity and the adverse action "was five months").  She also alleges that an unidentified white male purportedly was not disciplined for sitting on the rail, although she relies on that allegation to suggest only that her suspension was pretext for retaliation.  *See id.* at 15.  A plaintiff can indirectly establish a causal connection between protected activity and adverse employment actions not only by relying on temporal proximity, but also "through other evidence such as disparate treatment of fellow employees who engaged in similar conduct."  *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987).  So if that unidentified male was not disciplined for engaging in the same conduct as Green, that could both demonstrate pretext and establish a *prima facie* case of retaliation.  But for the reasons stated below, Green has not provided anything other than speculation that this unidentified male was not disciplined for the same conduct.  So this Court instead focuses on the temporal proximity between Green's protected activity and her disciplinary suspension.

[6] Even if this Court considered only Green's allegation that she was "assigned to jobs for which she had no training" in October 2020, Docket Item 1 at ¶ 33, the seven-month gap between Green's protected activity and her job assignment dispels any inference of causation.  *See Dayes v. Pace Univ.*, 2 F. App'x 204, 208 (2d Cir. 2001)

coworkers at the Tonawanda facility from the start when she was denied necessary retraining . . . ."); Docket Item 20-3 at 47-48 (Green's testifying about those allegations at her deposition). In fact, that allegedly inadequate training was the basis of Green's March 2020 EEOC discrimination charge. *See* Docket Item 20-2 at ¶ 23; Docket Item 25-9 at ¶ 23.

Moreover, viewing the inadequate training as adverse action that continued over time does not salvage Green's retaliation claim. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). Because Green provides no link between her 2019 suspension or her inadequate training and her 2020 EEOC charge other than temporal proximity, and because those adverse actions either entirely or largely preceded that protected activity, neither action is causally linked to her 2020 EEOC charge.

Whether Green's August 2020 suspension can be causally linked to her March 2020 EEOC charge is a closer question. While the Second Circuit "has not drawn a bright line defining[] . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship." *Gorzynski*, 596 F.3d at 110 (citing *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 555 (2d Cir. 2001)). At the same time, district courts in this Circuit have routinely dismissed retaliation claims

---

(summary order) (affirming grant of summary judgment on a retaliation claim, citing seven-month gap between protected activity and adverse employment action).

when the causation element hinged solely on shorter time gaps.  *See, e.g., Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 343 (S.D.N.Y. 2020) (collecting cases dismissing retaliation claims on the grounds that a gap of about four months is insufficient to establish causation).  So the fact that Green's August 2020 disciplinary suspension came five months after her EEOC charge is likely not alone sufficient to establish a *prima facie* retaliation case.  But even if five months were sufficient, Green's claim would fail at the next step of the *McDonnell-Douglas* analysis because she has not shown that General Motors' non-retaliatory reason for her suspension was in any way pretextual.

    **C.**    **Pretext**

Assuming that Green has established her *prima facie* retaliation case, the burden shifts to General Motors to provide "some legitimate, non-retaliatory reason" for her suspension.  *See Zann Kwan*, 737 F.3d at 845.  If General Motors makes that showing, the burden reverts to Green to show that the non-retaliatory reason is pretextual.  *See id.*  At that point, Green cannot rely solely on the time between her EEOC discrimination charge and her suspension to show that General Motors' proffered reason is pretext for unlawful retaliation.  *See id.* at 847 ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage.").  But she "may rely on evidence comprising her *prima facie* case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at th[is] stage."  *Id.* (italicization added).

General Motors says that Green was suspended in August 2020 for swearing at the Tonawanda facility manager and for violating safety rules by sitting on a railing.

Docket Item 20-2 at ¶ 27.  Green denies that she ever swore at the manager.[7]  Docket Item 25-9 at ¶ 27.  She concedes that she sat on the railing, *id.*, but she claims that "a Caucasian male [employee] sat on a rail in the same area" and was not disciplined.[8]  Docket Item 1 at ¶ 32; Docket Item 25-9 at ¶¶ 24-25.

Green has not offered evidence sufficient to support her assertion that another employee was not suspended under similar circumstances, however.  At her deposition, Green testified that an unidentified male sat on the rail in front of other unidentified coworkers and supervisors on two occasions about a month after her suspension.  Docket Item 20-3 at 51-52.  Green did not recall whether the facility manager was there, and she did not report the incident to anyone who worked at the Tonawanda facility.  *Id.*

---

[7] Because General Motors has offered a separate, independent reason for Green's disciplinary suspension—her violation of facility safety rules—the factual dispute about whether Green swore at the facility manager does not preclude summary judgment on the issue of pretext.  *Cf. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision . . . .").

[8] In her opposition to General Motors' statement of material facts, Green also says that she was informed that sitting on the rail was not a safety violation, that "there is no specific posted or written safety rule" prohibiting sitting on the rail, and that a second employee received a lighter suspension for violating safety rules.  Docket Item 25-9 at ¶¶ 25, 27.  Green supports only the last contention with a citation to the record, and it is not clear to this Court how that citation supports her claim.  *See id.* at ¶ 27 (citing to line four of page 100 of Green's deposition); Docket Item 20-3 at 27 (line four of page 100 of Green's deposition, where Green testified that she "filed a second charge [with the EEOC]" but did not elaborate on what that charge entailed).  Without further support for the facts in Green's opposition, this Court cannot credit them on a motion for summary judgment.  *See supra* at 2 n.1.  Similarly, while Green contends that sitting on the rail was not in fact a violation of facility safety rules, she cites only a section of her deposition where she generally described the incident to support that assertion.  *See* Docket Item 25-9 at ¶ 24.

14

at 52. But Green recalled that, "as far as [she] could tell," no one asked the unidentified coworker to get off the rail. *Id.*

So Green offers only her own surmise that a coworker—who Green has not identified through any discovery in this case—was not disciplined for the same conduct. She does not identify who saw the coworker sitting there, nor does she suggest that anyone with the authority to suspend the coworker knew about the violation. *See id.* (recalling that she "didn't see" the plant manager on those two occasions). So her assertion amounts to nothing more than conjecture or speculation, and "conjecture[] or speculation by the party resisting the motion will not defeat summary judgment." *See Kulak*, 88 F.3d at 71. Stated another way, without further information about this unidentified coworker and who knew about the alleged violation, this Court cannot conclude that Green has raised a factual dispute about whether any purported difference in discipline demonstrates that her violation of the safety rules was pretext for retaliation. *See, e.g.*, *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 7 (2d Cir. 2017) (summary order) ("[The retaliation] claim boils down to a question of whether [the plaintiff] and [the coworker] are sufficiently similar in their history . . . that [the plaintiff's] treatment can be attributed to [protected activity] (in which [the plaintiff] and [the coworker] differ) rather than attributed to his behavior (in which [the plaintiff] and [the coworker[] . . . do not differ).").

In sum, it is Green's burden to show that General Motors' proffered non-retaliatory reason for her August 2020 disciplinary suspension is "a mere pretext for retaliation." *Zann Kwan*, 737 F.3d at 845. But Green has only offered her own say so that a coworker was not disciplined for engaging in similar conduct. And Green has not

15

otherwise pointed to any "weaknesses, implausibilities, inconsistencies, or contradictions" that would show that her August 2020 disciplinary suspension was the result of unlawful retaliation.[9] *See id.* at 846.  General Motors' motion for summary judgment therefore is granted with respect to Green's Title VII retaliation claim.

## II.   NYSHRL CLAIM

For the reasons stated above, General Motors is entitled to summary judgment on Green's Title VII retaliation claim.  Until recently, that likely would mark the end of the road for her NYSHRL retaliation claim as well.  *See, e.g.*, *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) ("The standards for evaluating hostile work environment and retaliation claims are identical under Title VII and the NYSHRL."); *but see Smith*, 440 F. Supp. 3d at 340 n.22 (noting some uncertainty about whether NYSHRL retaliation claims are governed by the but-for causation standard after *Nassar*).

In 2019, however, the New York State Legislature amended the NYSHRL to provide that "[t]he provisions of [the NYSHRL] shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws[] . . . have been so construed."  N.Y. Exec. Law § 300; *see Arazi v. Cohen Brothers Realty Corp.*, 2022 WL 912940, at *7 (S.D.N.Y. Mar. 2022).  After that amendment, district courts in this Circuit have analyzed retaliation claims brought under

---

[9] As noted above, *see supra* n.8, Green's other attempts to undermine General Motors' explanation for the disciplinary suspension are unsupported by the record.  And while Green says that she sat on the rail for two days without incident before she was suspended, she does not say that she encountered the facility manager on those two days or otherwise explain how that might show that her disciplinary suspension was the result of unlawful retaliation for filing the March 2020 charge of discrimination.

the NYSHRL using the broader standards that apply to the NYCHRL.  *See, e.g.*, *Arazi*, 2022 WL 912940, at *16-17; *Forrest v. N.Y.C. Hous. Auth.*, 2023 WL 3203646, at *4 (S.D.N.Y. May 2, 2023) (citing *Arazi*, 2022 WL 912940, at *17).  So after the 2019 amendments to the NYSHRL, the dismissal of Green's Title VII claim might not necessarily defeat her NYSHRL claim.

In light of these relatively recent changes, and because Green's lone federal claim has been dismissed for the reasons stated above, this Court will not decide the merits of her NYSHRL claim.  Federal district courts "have supplemental jurisdiction over all [] claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  But a court "may decline to exercise supplemental jurisdiction over a claim" if, among other reasons, "the claim raises a novel or complex issue of State law" or the court "has dismissed all claims over which it has original jurisdiction."[10]  *Id.* § 1367(c).  If a court has dismissed all the federal claims over which it had original jurisdiction, it "balances the traditional 'values of judicial economy, convenience, fairness, and comity[]' in deciding whether to exercise jurisdiction."  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 450 (1988)).  And "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will

---

[10] Because Green alleges that she is a citizen of Michigan and that General Motors has its principal place of business in Michigan, *see* Docket Item 1 at ¶¶ 2, 3, the Court does not have diversity jurisdiction over her NYSHRL claim.  *See* 28 U.S.C. § 1332(a)(1), (c)(1); *see also* Docket Item 1 at ¶ 4 (Green's alleging that the Court has "[s]upplemental jurisdiction over [her] pend[e]nt state law claim[ under] 28 U.S.C. § 1367").

point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (alterations omitted) (quoting *Cohill*, 484 U.S. at 350 n.7).

After dismissing Title VII claims, other courts have declined to exercise supplemental jurisdiction over NYCHRL claims at the summary judgment stage on the grounds that those claims, which are evaluated under a different legal standard, present "distinctly state-law question[s]." *See, e.g.*, *Ebel v. G/O Media, Inc.*, 2022 WL 2359245, at *30 (S.D.N.Y. June 30, 2022); *Fitzgerald v. We Co.*, 2022 WL 952963, at *10 (S.D.N.Y. Mar. 30, 2022) (declining to exercise supplemental jurisdiction after granting summary judgment on federal claims because "the NYSHRL and NYCHRL employ a different, more liberal substantive standard in resolving . . . retaliation[] and hostile work environment claims").  In light of the amendments to the NYSHRL, this Court finds that reasoning persuasive here as well:  Because Green's lone federal claim has been dismissed before trial, her NYSHRL claim—which now may be governed by a different standard—is best left to the New York State courts.  And the parties already have conducted discovery here, so Green's NYSHRL claim likely can be efficiently resolved in state court should she seek to pursue it there.  *See Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359, 394 (S.D.N.Y. 2013) ("The extensive discovery already taken is likely sufficient to enable [the p]laintiffs' NYCHRL claims to be evaluated in state court without any additional discovery.").  This Court therefore declines to exercise supplemental jurisdiction over Green's NYSHRL claim and instead dismisses that claim without prejudice.

**CONCLUSION**

For the reasons stated above, General Motors' motion for summary judgment, Docket Item 20, is GRANTED in part.  The Court grants General Motors' motion for summary judgment on Green's Title VII claim, but it declines to exercise supplemental jurisdiction over her NYSHRL claim, and Green's NYSHRL claim is dismissed without prejudice.  The Clerk of the Court shall close the case.

SO ORDERED.

Dated:   May 18, 2023
             Buffalo, New York

                                                         */s/ Lawrence J. Vilardo*
                                                        LAWRENCE J. VILARDO
                                                        UNITED STATES DISTRICT JUDGE